UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

DAVID RIVERA,

                                                        Plaintiff,

v.

DR. LESTER N. WRIGHT; et al.,

                                                        Defendants.

**DECISION AND ORDER**

08-CV-00157-JJM

_____

        In accordance with 28 U.S.C. §636(c), the parties have consented to jurisdiction by a United States Magistrate Judge [38].[1]  Before me is defendants' motion to dismiss plaintiff's complaint pursuant to Fed. R. Civ. P. ("Rule") 12(b)(6) and (c) [60].  For the following reasons, defendants' motion is granted in part and denied in part.

**BACKGROUND**

        Plaintiff, an inmate, commenced this 42 U.S.C. §1983 action *pro se* by complaint dated September 23, 2007 (filed February 13, 2008), alleging that defendants, employees of the New York State Department of Correctional Services ("DOCS"), were deliberately indifferent to his medical needs in violation of the Eighth Amendment.[2]  Plaintiff alleges that upon admission to Downstate Correctional Facility on June 10, 2008, he tested positive for Latent Tuberculosis Infection ("LTI") and was placed on a regimen of preventive therapy, which included "INH" and "B6" twice weekly.  Complaint [4], ¶¶19-20.  On July 1, 2008 he was transferred to Sing Sing

---

[1]    Braketed references are to the CM/ECF docket entries.

[2]    The case was originally filed in the Southern District of New York and transferred to the Western District of New York [4].

Correctional Facility, and continued this course of treatment. Id., ¶22. While taking this medication, plaintiff began to experience side effects. Id., ¶23. When he advised defendant Miller on September 18, 1998 of these complications, his medication was discontinued. Id., ¶24. However, it was never explained to plaintiff by defendants Miller or Osorio that "there was a commonly used alternative medication (Rifampin) that could have been prescribed to treat the plaintiff's serious medical condition." Id., ¶25. It was also not explained to plaintiff "the dangers associated with discontinuance of the medication for [LTI], and how the disease could physically harm plaintiff if not properly treated for the full course of one year." Id., ¶27. His LTI was neither monitored or treated. Id., ¶28.

On or about November 2, 1998, plaintiff was transferred to Great Meadow Correctional Facility, where he was screened by defendants Elaine Dunning and Stephanie King. Id., ¶29.[3] He alleges that on November 23, 2008, defendant Dunning placed a false notation in the ambulatory record that he refused medication. Id., ¶32

From May 2000 to approximately March 2002, plaintiff was transferred between Cayuga Correctional Facility, Auburn Correctional Facility, and Marcy Correctional Facility. Id., ¶34. Throughout this period plaintiff was neither monitored nor received treatment for his LTI. Id., ¶35. While at Elmira Correctional Facility in November 2002, plaintiff complained of respiratory problems and defendant Wesley Canfield diagnosed with asthma, but did not discuss alternative treatments for his LTI. Id., ¶39.[4]

---

[3]   The parties stipulated to replace the reference in the complaint to Nurse Pauldin with Stephanie King [41].

[4]   John Doe #1 defendant has since been identified as Dr. David Canfield and John Doe #2 as Herman Fowler, Physician Assistant . February 20, 2009 Text Order [16].

Plaintiff was transferred to Lakeview Correctional Facility in May 2003, and he continued to receive no treatment for his LTI. Id., ¶41. Following his transfer to Five Points Correctional Facility in November 2003, plaintiff experienced serious respiratory problems and was examined by defendant Herman Fowler, but was not advised of alternative treatments for his LTI. It was not until plaintiff's transfer to Mohawk Correctional Facility that he was prescribed Rifampin for his LTI in January 2006. Id., ¶45. However, because "[p]laintiff was simply called to the facility infirmary and was given the medication without any information as to what it was for, and since plaintiff was not advised of any diagnoses associated with [LTI] he did not take the medication." Id. ¶46. According to plaintiff, the medication prescribed also "appeared to be the standard medication (INH) used to treat symptoms associated with [LTI]." Id., ¶47.

Plaintiff complained to defendant Lester Wright, M.D., the Chief Medical Officer for DOCS, about the prescription, and was advised by letter dated April 19, 2006 from Pedro Diaz, DOCS' Regional Health Service Assistant, that he would be receiving the alternative medication to treat his LTI. Id., ¶¶48-51. Despite this assurance, plaintiff was not provided with the promised alternative medication. Id. ¶52.

Upon his transfer to Marcy Correctional Facility, plaintiff continued his efforts to learn why he was not receiving the alternative medication, and after prevailing on a grievance complaint in July 2006, he began receiving this medication. Id. ¶¶54-59. In July 2006, he also filed a successful grievance complaint permitting him to obtain his medical records. Id., ¶57.

Plaintiff's *pro se* complaint asserts Eighth Amendment deliberate indifference claims against all defendants for allegedly failing to "make accurate notations in [his] medical records, failing [to] follow proper protocol with regard to plaintiff's alleged refusal of medical

treatment[,] failing to provide plaintiff with adequate medical treatment for his serious medical condition [,] failing to provide or offer proper medications [,] failing to inform plaintiff of alternative medications, failing to request DOCS approval of alternative medications (Rifampin/Rifabutin)[,] failing to explain to plaintiff the proper course of treatment to treat his illness, and failing to monitor plaintiff's medical condition." Complaint [1], ¶¶74, 68, 71. After plaintiff's *pro se* complaint was filed, he was appointed counsel.

Defendants Osorio and King have not been served with the complaint. Defendants' Memorandum of Law [61], p.2. The remaining answering defendants "move to dismiss the complaint in its entirety pursuant to [Rule] 12(b)(6) (as to those defendants who have not answered the complaint) and 12(c) (as to those defendant have answered the complaint)." Defendants' Memorandum of Law [61], p.2. They argue that the complaint should be dismissed against defendant Wright for lack of personal involvement and against the remaining defendants as being time-barred. Id., Points 1 and 2. Plaintiff opposes the motion and, alternatively, seeks leave to amend the complaint. Plaintiff's Memorandum of Law [64], Point III.

## ANALYSIS

**A.    Dismissal Standard**

Rule 12(c) provides that "[a]fter the pleadings are closed-but early enough not to delay trial-a party may move for judgment on the pleadings". Rule 12(c). "Courts faced with motions under Rule 12(c) apply the same standard used to decide motions brought under Rule 12(b)(6)." Matwijko v. Board of Trustees of Global Concepts Charter School, 2006 WL 2466868, *2 (W.D.N.Y.2006) (Arcara, J./Schroeder, M.J.). Unless futile, "the court should not

dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated". <u>Branum v. Clark</u>, 927 F.2d 698, 705 (2d Cir. 1991).

### B. Personal Involvement of Defendant Wright

Defendants argue that defendant Wright's receipt of complaints from plaintiff concerning his medical treatment are insufficient to establish his personal involvement as a supervisory official. Defendants' Memorandum of Law [61], Point 1.

It had previously been well settled that "[t]he personal involvement of a supervisory defendant may be shown by evidence that: (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring." <u>Colon v. Coughlin</u>, 58 F.3d 865, 873 (2d Cir. 1995). However, in <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009), the Supreme Court clouded this issue when it rejected the argument that "a supervisor's mere knowledge of his subordinate's discriminatory purpose amounts to the supervisor's violating the Constitution", concluding that "each Government official, his or her title notwithstanding, is only liable for his or her own misconduct."

Since Iqbal, some districts courts have determined that not all five of Colon's categories of conduct that may give rise to supervisory liability remain viable. *See e.g.*, Spear v. Hugles, 2009 WL 2176725, *2 (S.D.N.Y. 2009)("only the first and third *Colon* factors have survived the Supreme Court's decision in *Iqbal*"); Bellamy v. Mount Vernon Hospital, 2009 WL 1835939, *6 (S.D.N.Y. 2009)("The Supreme Court's decision in *Iqbal v. Ashcroft* abrogates several of the categories of supervisory liability enumerated in *Colon v. Coughlin*. *Iqbal's* active conduct standard only imposes liability on a supervisor through section 1983 if that supervisor actively had a hand in the alleged constitutional violation. Only the first and part of the third *Colon* categories pass *Iqbal's* muster"); Bryant v. County of Monroe, 2010 WL 4877799, *3 (W.D.N.Y. 2010) (Siragusa, J.) ("The Court . . . is persuaded by the analysis of . . . *Iqbal* . . . in *Bellamy*").[5]

Although I question those decisions holding that Iqbal has narrowed the categories of conduct that may give rise to supervisory liability in all contexts,[6] I need not resolve this issue because the allegations of the complaint against defendant Wright are insufficient to survive dismissal even under pre-Iqbal precedent.

---

[5]     Adding to this uncertainty is the fact that the Second Circuit has not yet addressed this issue.

[6]     I tend to agree with those courts that have held that "'[i]t was with intent-based constitutional claims in mind, specifically racial discrimination, that the Supreme Court rejected [in *Iqbal* ] the argument that a supervisor's mere knowledge of his subordinate's discriminatory purpose amounts to the supervisor's violating the Constitution. . . .  Thus, where the claim does not require a showing of discriminatory intent, the *Colon* analysis should still apply, insofar as it is consistent with the particular constitutional provision alleged to have been violated.'" Delgado v. Bezio,  2011 WL 1842294, *9 (S.D.N.Y. 2011).

The breadth of allegations against defendant Wright are that he received a letter from plaintiff dated April 10, 2006 complaining about his medical treatment and that this letter was responded to by Pedro Diaz, DOCS Regional Health Service Assistant.  Complaint [1], ¶¶ 48-50, Exs. J and K.  However, the receipt of a complaint from an inmate, without more, does not establish personal involvement of a supervisory official.  See Sealey v. Giltner, 116 F.3d 47, 51 (2d Cir. 1997) ("Sealey wrote two letters to Coughlin.  Coughlin referred the first letter, Sealey's appeal from the . . . administrative . . .  hearing, to defendant Selsky for decision.  Sealey's second letter was a status inquiry to which Coughlin responded by informing Sealey that Selsky had rendered a decision.  Sealey's letters and Coughlin's response do not demonstrate the requisite personal involvement on Coughlin's part").

Although "plaintiff acknowledges that in some cases the mere receipt of a letter may not be enough to hold a supervisor liable", he argues that "the complaint alleges more than that" by alleging that Dr. Wright's office promised alternative treatment to plaintiff, but failed to assure that this promise was enforced. Plaintiff's Memorandum of Law [64], p.11.  I disagree.  The fact that someone working under defendant Wright may have responded to the letter (with promises) does not establish the personal involvement of defendant Wright.  See Ramos v. Artuz, 2001 WL 840131,*8-10  (S.D.N.Y.  2001) (drawing a distinction between the lack of personal involvement by Superintendent Artuz who forwarded letters to others to respond, and Health Services Administrator Zwillinger whose "involvement extends beyond the mere receipt of letters.  Zwillinger sent plaintiff numerous letters containing some explanation or justification concerning the issues raised by plaintiff in his letter to defendant Artuz").  Therefore, I grant defendants' motion to dismiss the complaint as against defendant Wright.

**C.     Timeliness of the claims Against the Remaining Defendants**

Defendants argue that with the exception of defendant Wright, the claims against the other defendants are time-barred. Defendants' Memorandum of Law [61], Point 2. While the parties agree that the statute of limitations for plaintiff's claims is three years, they disagree about when plaintiff's claims accrued. Defendants' Memorandum of Law [61], Point 2; Plaintiff's Memorandum of Law [64], Point I.

A section 1983 cause of action accrues "when the plaintiff knows or has reason to know of the injury which is the basis of his action". Pearl v. City of Long Beach, 296 F.3d 76, 80 (2d Cir. 2002), cert. denied, 538 U.S. 922 (2003). However, "[t]he continuing violation doctrine is an 'exception to the normal knew-or-should-have-known accrual date. " Shomo v. City of New York, 579 F.3d 176, 181 (2d Cir. 2009). "To assert a continuing violation for statute of limitations purposes, the plaintiff must allege both the existence of an ongoing policy of deliberate indifference to his or her serious medical needs and some non-time-barred acts taken in the furtherance of that policy." Id., 182.

The February 22, 2008 filing date of the complaint differs from the September 23, 2007 date the complaint was signed. Complaint [4]. However, I need not resolve this conflict at this time because defendants assume for purposes of this motion that plaintiff commenced the case on September 23, 2007.[7] While the complaint alleges deliberate indifference based upon a variety of conduct (*see* complaint [4], ¶¶68, 71, 74), the crux of plaintiff's allegations center on the fact that he was never advised of or provided with alternative medications for his LTI from

---

[7]     Defendants indicate that the case was commenced on September 27, 2007. Defendants' Memorandum of Law [61], p.6.  I assume that this is a typographical error.

September 18, 1998, when he discontinued the standard medicine until on or about July 2006, when he began receiving the alternative medicine he sought.  Complaint [4], ¶¶25, 58.

It is difficult to discern from the face of the complaint when plaintiff learned that alternative medications were available to treat his LTI.  All that is clear from the allegations of the complaint is that plaintiff's formal request for alternative medication was made in his April 10, 2006 complaint to defendant Wright.  Complaint [1], Ex. J.  As noted by plaintiff, since "[h]e has no formal medical training, and at all relevant times he was dependent on prison authorities for medical care and the information to pursue such care", it would be unreasonable to assume that plaintiff knew or should have known throughout the period alleged in the complaint that alternative medications were available to treat his LTI.  Plaintiff's Memorandum of Law [64], p.6.  Therefore, giving plaintiff the benefit of every favorable inference, I conclude that these allegations are sufficient, at this stage, to establish that deliberate inference claims accrued as of plaintiff's April 10, 2006 complaint to defendant Wright and prevent dismissal on statute of limitations grounds.[8]

**D.    Leave to Amend the Complaint**

Plaintiff asks that in the event I dismiss any aspect of his complaint that he be given the opportunity to amend the complaint.  Plaintiff's Memorandum of Law [64], Point III.

---

[8]    Given this conclusion, I need not analyze plaintiff's alternative reliance on the continuing violation doctrine.  However, I am dubious of plaintiff's attempt to apply the continuing violation doctrine based upon the alleged conduct of defendant Wright, which took place within the statute of limitations period. Plaintiff's Memorandum of Law [64], p.8. *See* Crenshaw v. Syed, 2011 WL 2975687, *4 (N.D.N.Y. 2011), adopted by 2011 WL 2975775 ("for the continuing violation doctrine to apply, plaintiff needed to show that *those specific individuals* committed at least one wrongful act within the statutory time period" (emphasis in original)).

"Where, as here, a scheduling order governs amendments to the complaint, . . . 'the lenient standard under Rule 15(a) . . . must be balanced against the requirement under Rule 16(b) that the Court's scheduling order 'shall not be modified except upon a showing of good cause.'" <u>Holmes v. Grubman</u>, 568 F.3d 329, 334–335 (2d Cir. 2009), <u>cert</u>. <u>denied</u>, 131 S.Ct. 795 (2010). *See* <u>Carnrite v. Granada Hospital Group, Inc.</u>, 175 F.R.D. 439, 446 (W.D.N.Y.1997) (Arcara, J./Foschio, M.J.) ("[A] party seeking to amend a pleading after the date specified in a scheduling order must first show 'good cause' for the amendment under Rule 16(b); then, if good cause can be shown, the party must demonstrate that the amendment is proper under Rule 15(a)"). "Whether good cause exists turns on the 'diligence of the moving party.' " <u>Id</u>., 335.

        The deadline for amending pleadings and joining other parties expired on July 15, 2009, nearly 2 years before defendants' motion was filed. Case Management Order [29], ¶2. However, defendants did not to file a reply in response to plaintiff's request for leave to file an amended complaint, despite having the opportunity to do so. As discussed above, the pleading standards for asserting claims against supervisory officials is not manifest. Therefore, I conclude that plaintiff's failure to seek amendment of the complaint by the Case Management Order deadline was not attributable to a lack of diligence. Under these circumstances, I will grant plaintiff leave to attempt to assert a viable claim against defendant Wright.

## CONCLUSION

        For these reasons, I order that defendants' motion be granted to the extent it seeks dismissal of the claims against defendant Wright, but otherwise be denied, without prejudice to plaintiff's right to file an amended complaint by January 31, 2012 re-alleging his claims against

defendant Wright.  Because discovery was stayed pending resolution of this motion [59], the parties shall confer and submit (jointly or individually) proposed case management order deadlines for completing this case by January 17, 2012.

**SO ORDERED**.

Dated: January 3, 2012

                                          /s/ Jeremiah J. McCarthy
                                          JEREMIAH J. MCCARTHY
                                          United States Magistrate Judge